LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOEL TURNER, *on behalf of himself, FLSA Collective Plaintiff and the Class,*<br><br>                    Plaintiff,<br><br>v.<br><br>TISHMAN SPEYER PROPERTIES, INC., d/b/a TISHMAN SPEYER and RCPI HOLDCO, L.L.C.,<br><br>                    Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff JOEL TURNER ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, TISHMAN SPEYER PROPERTIES, INC. and RCPI HOLDCO, L.L.C., and states as follows:

**INTRODUCTION**

1.    Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime wages, due to time shaving and rounding, (2) liquidated damages, and (3) attorneys' fees and costs.

1

2. Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime wages, due to time shaving and rounding, (2) statutory penalties, (3) liquidated damages, and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5. Plaintiff JOEL TURNER is a resident of New York State.

6. While Defendant TISHMAN SPEYER PROPERTIES, INC. primarily engages in the buying, selling and developing of residential and commercial properties, Defendant TISHMAN SPEYER PROPERTIES, INC., also offer and employ security services for their own and others' property through its wholly owned subsidiary Defendant RCPI HOLDCO, L.L.C.

7. While Plaintiff is listed on his paystubs as working for Defendant RCPI HOLDCO, L.L.C., Defendants function as joint employers and operate as a single integrated enterprise. Defendants share ownership, have the same executive management team, share managers for employees, and share the same headquarters with the same policies and procedures. The Defendants engage in related activities, share common ownership, and have a common business purpose:

   a. Defendants share a headquarters at Rockefeller Center, located at 45 Rockefeller Plaza, New York, NY 10111, where Plaintiff worked.

      b. Defendant RCPI HOLDCO, L.L.C. is wholly owned by Defendant TISHMAN SPEYER PROPERTIES, INC.

      c. Pursuant to Court filings of Defendant TISHMAN SPEYER PROPERTIES, INC. in the action *Pacheco v. RCPI Landmark Properties*, 157657/2019 at Dkt. 85, Defendant TISHMAN SPEYER PROPERTIES, INC. and RCPI HOLDCO, L.L.C. share both executive managers and lower-level managers, who jointly manage and employ those working for Defendant RCPI HOLDCO, L.L.C.

8. Corporate Defendant, TISHMAN SPEYER PROPERTIES, INC. d/b/a TISHMAN SPEYER, is a business corporation duly organized under the laws of the State of Delaware with its principal place of business and global headquarters located at 45 Rockefeller Plaza, New York, NY 10111.

9. Corporate Defendant, RCPI HOLDCO, L.L.C., is a limited liability company duly organized under the laws of the State of Delaware with its principal place of business located at 45 Rockefeller Plaza, New York, NY 10111.

10. This Court has personal jurisdiction over Defendants in that they are headquartered in the State of New York.

11. Each Defendant engages in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that the employees of each Defendant handles goods and materials produced outside of New York (including vehicles, tools, cleaning supplies, and other items) that have moved in interstate commerce, and the Defendants are thus employers subject to the jurisdiction of the FLSA.

12. At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL and any Regulations thereunder.

13. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendants.

14. Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

15. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section l6(b), 29 U.S.C. § 216(b), on behalf of all non-exempt security guards and patrol officers employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

16. At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them regular and overtime wages for all hours worked due to time shaving and rounding. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

17. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## **RULE 23 CLASS ALLEGATIONS**

18.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt security guards and patrol guards employed by Defendants on or after the date that is six (6) years before the filing of this Complaint (the "Class" or "Class Members").

19.     At all relevant times, Plaintiff and Class Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them regular and overtime wages for all hours worked due to time shaving and rounding. The claims of Plaintiff stated herein are essentially the same as those of Class Members.

20.     Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

21.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

22. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All Class Members were subject to Defendants' corporate practices of (i) failing to pay wages including overtime wages for all hours worked due to time shaving and rounding, (ii) failing to provide Class Members with proper wage statements with every payment of wages, and (iii) failing to properly provide wage notices to Class Members, at date of hiring and dates of all wage changes, per requirements of the NYLL.

23. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

24. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

25. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation

would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

26. Defendants and other employers throughout the country violate their respective states' labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

27. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

    a) Whether Defendants employed Plaintiff and Class Members within the meaning of the NYLL;

    b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

    c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants properly notified Plaintiff and Class Members of their regular hourly rate and overtime rate;

e) Whether Defendants paid Plaintiff and Class Members for all hours worked per the requirements of NYLL;

f) Whether Defendants provided proper wage statements to Plaintiff and Class Members per requirements of the NYLL; and

g) Whether Defendants provided proper wage notices to Plaintiff and Class Members per requirements of the NYLL.

## STATEMENT OF FACTS

28. On or around December 5, 2022, Plaintiff was hired by Defendants to work as a security guard for Defendants' headquarters,, Rockefeller Center located at 45 Rockefeller Plaza, New York, NY 10111. Plaintiff's employment was terminated on or around January 23, 2023.

29. During his employment, Plaintiff was compensated at a rate of twenty-three dollars ($23.00) per hour. FLSA Collective Plaintiffs and Class members were compensated at similar rates.

30. Throughout Plaintiff's employment with Defendants, Plaintiff was scheduled to work five (5) days per week, from 12:00 a.m. until 8:00 a.m. for a total of forty (40) hours per week. Plaintiff always worked his scheduled hours, and time in addition to these scheduled hours which went uncompensated.

31. Like Plaintiff, FLSA Collective Plaintiffs and Class members were scheduled to work similar hours and worked hours beyond their scheduled hours which went uncompensated.

32. Defendants improperly paid non-exempt employees only for their scheduled hours and/or rounded employees' hours down to deprive employees of their earned compensation. Defendants would schedule Plaintiff's, FLSA Collective Plaintiffs,' and Class Members' shifts to run "back-to-back," so each of Defendants' guards would be replaced by their shift guard to provide continuous security with no overlap in employment schedules. For Plaintiff, FLSA

Collective Plaintiffs, and Class Members to be relieved from duty, Defendants required these employees to remain at the site until a "relief" guard arrived and was fully debriefed before leaving their post. As Defendants only paid for scheduled shifts and/or rounded employees' time, this overlapping period between security personnel was always unpaid. Defendants required employees to stay past their shift to (i) wait for the incoming employee to arrive on site, and (ii) then required the departing employee to debrief the arriving employee before leaving. Defendants' system permitted them to retain a windfall of uncompensated employee wages.

33. Plaintiff, FLSA Collective Plaintiffs, and Class members were all similarly not compensated for this after scheduled hours work time. Plaintiff, FLSA Collective Plaintiffs, and Class members were similarly undercompensated for 15 minutes per shift. For Plaintiff who worked five (5) days per week, this timeshaving and rounding resulted in an hour and fifteen minutes of uncompensated time each week. This policy also resulted in a failure to pay all of Plaintiff's overtime hours such as in the week of January 2, 2023 to January 8, 2023 where Plaintiff was compensated for approximately 55 hours, but really worked approximately 58 hours. Similarly, FLSA Collective Plaintiffs and Class members were also not paid for all overtime hours.

34. Throughout his employment with Defendants, Plaintiff regularly observed and spoke to his co-workers about Defendants' pay practices and policies. Based on Plaintiff's direct observations and conversations with other employees, Plaintiff, FLSA Collective Plaintiffs and Class Members were subjected to the same unlawful employment practices of time shaving and rounding.

35. Defendants knowingly and willfully operated their business with a policy of not paying the proper overtime rate for all hours worked in excess of forty (40) in each workweek due to time shaving and rounding to Plaintiff, FLSA Collective Plaintiffs and Class Members.

36. Defendants knew that Plaintiff and other similarly situated employees engaged in work after their scheduled shift ended, as Defendants were the ones to require such work. Defendants knew that despite requiring such work they were not compensating Plaintiff and other employees for this work.

37. Defendants failed to provide Plaintiff with wage notices at hiring and at dates of all wage changes, thereafter, as required by the NYLL. Plaintiff did not receive wage notices either upon being hired or upon wage changes since the date of hiring in violation of the NYLL. Similarly, Class Members were never provided with any wage notices.

38. Plaintiff and New York Class members did not receive wage statements that were in compliance with the NYLL.

39. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiff's interest in ensuring proper pay. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

40. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and New York Class members. Defendants' conduct actually harmed Plaintiff and Class members. Defendants' failure to provide paystubs listing all hours and rates of pay, including overtime hours

10

and overtime rates, deprived employees of the ability to contest Defendants' calculations, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff and Class members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under state law. Defendants' failure to provide a wage notice to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

41. Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation. The failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiff and Class members. This delayed payment caused Plaintiff to struggle to timely pay bills. Class members similarly struggle to timely pay debts due to Defendants' continued attempts to hide wrongdoing from employees.

42. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL.

43. Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to employees, at the beginning of employment and at dates of all wage changes thereafter, pursuant to the requirements of the NYLL.

44. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and the Class, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

45. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

46. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

47. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

48. At all relevant times, each of the Corporate Defendants had gross annual revenues in excess of $500,000.

49. At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs the full amount of wages due because of time shaving and rounding, including overtime wages, in violation of the FLSA.

50. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

51. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all

hours worked, including overtime hours, when Defendants knew or should have known such was due.

52. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

53. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

54. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages including unpaid overtime wages, due to time shaving and rounding, plus an equal amount as liquidated damages.

55. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## **VIOLATION OF THE NEW YORK LABOR LAW**

56. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

57. At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the NYLL §§ 2 and 651.

58. Defendants knowingly and willfully failed to pay Plaintiff and Class Members the full amount of regular and overtime wages as a result of time shaving and rounding in violation of the NYLL.

59. Defendants knowingly and willfully failed to provide Plaintiff and Class Members with proper wage statements as required under the NYLL.

60. Defendants knowingly and willfully failed to provide Plaintiff and Class Members with proper wage and hour notices as required under the NYLL.

61. Due to the Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages due to time shaving and rounding, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to the NYLL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class Members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages due to time shaving and rounding under the FLSA and NYLL;

d. An award of liquidated damages as a result of Defendants' willful failure to pay wages pursuant to the FLSA;

e. An award of liquidated damages as a result of Defendants' willful failure to pay wages, pursuant to the NYLL;

f. An award of pre-judgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

g. Designation of Plaintiff as the Representative of the FLSA Collective Plaintiffs;

h. Designation of this action as a class action pursuant to F.R.C.P. 23;

i. Designation of Plaintiff as Representative of the Class; and

j. Such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: June 12, 2023                                   Respectfully submitted,

                                                                           LEE LITIGATION GROUP, PLLC

                                                                  By:  */s/ C.K. Lee*

                                                                           C.K. Lee, Esq. (CL 4086)
                                                                           Anne Seelig, Esq. (AS 1976)
                                                                           148 West 24th Street, Eighth Floor
                                                                           New York, NY 10011
                                                                           Tel.: (212) 465-1188
                                                                           Fax: (212) 465-1181
                                                                           *Attorneys for Plaintiff,*
                                                                           *FLSA Collective Plaintiffs,*
                                                                           *and the Class*